# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CRYSTAL BARTZ, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-245 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| SPEEDY CASH, SCIL, INC., and AD ASTRA COLLECTION AGENCIES, INC., | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats, (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed its collection efforts into the District.

## PARTIES

3. Plaintiff Crystal Bartz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction with agreements to defer payment.

6. Defendant Speedy Cash is a foreign business corporation with its principal office located at 3527 North Ridge Road Wichita, KS 67205.

7. Speedy Cash is in the business of offering various consumer financial products, including an array of short-term installment loans. *See* https://www.speedycash.com/ (last accessed January 22, 2020).

8. Speedy Cash does substantial business in Wisconsin.

9. Defendant SCIL, Inc. ("SCIL") is for a foreign business corporation with its principal office located at 3527 N Ridge Rd. Wichita, KS 67205.

10. Upon information and belief, Speedy Cash and SCIL are affiliated entities.

11. Upon information and belief, SCIL finances the consumer loans advertised by Speedy Cash, and Speedy Cash in turn acts as the servicer or "broker" of such loans.

12. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

13. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

2

Case 2:20-cv-00245-PP    Filed 02/14/20    Page 2 of 16    Document 1

14. Speedy Cash and SCIL are each a "debt collector" under Wisconsin law, in that it collects consumer debts owed to SCIL, both directly and indirectly through collection agencies.

15. Speedy Cash and SCIL are each a "merchant" as defined in the WCA, as the alleged debt arose from an extension of credit to a consumer. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

16. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

17. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

18. Speedy Cash and SCIL use third-party debt collection agencies, including Defendant Ad Astra Collection Agency, Inc., to collect consumer debts.

19. Speedy Cash and SCIL, directly or indirectly, are each a "debt collector" under this arrangement. Wis. Stat. § 427.103(3).

20. Any company meeting the definition of a "debt collector" (here, Speedy Cash and SCIL) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees

3

who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

21. Defendant Ad Astra Recovery Services, Inc. ("Ad Astra") is a foreign business corporation with its principal offices located at 7330 West 33rd Street N. Ste 118, Wichita, Kansas 67205.

22. Ad Astra is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

23. Ad Astra is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

24. Ad Astra is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

25. On or around February 2, 2019, Speedy Cash mailed to Plaintiff a letter regarding an alleged debt. A copy of this statement is attached to this complaint as Exhibit A.

26. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of a short-term consumer loan which was used exclusively for personal, family, and household purposes.

27. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of a short-term consumer loan financed by SCIL, for which Speedy Loan acted as the servicer or "broker."

28. Upon information and belief, Exhibit A is a form letters, generated by computer, and with the information specific to Plaintiff inserted by computer.

4

29. Upon information and belief, <u>Exhibit A</u> is a form letters, used by Speedy Cash to attempt to collect alleged debts.

30. <u>Exhibit A</u> includes the following representation:

> The Total Past Due Amount: $239.56 must be paid to us by 03/17/2019 ("Payment Date"). If you do not pay the Total Past Due Amount by the Payment Date, all unpaid amounts under your Agreement shall become immediately due and payable.

31. <u>Exhibit A</u> thus states that the "Total Past Due Amount" is $239.56 and that such amount must be paid by the "Payment Date," which is indicated to be March 17, 2019, otherwise the full balance of Plaintiff's alleged debt will be accelerated.

32. <u>Exhibit A</u>, however, also includes the following representation

> If you pay the Total Past Due Amount, together with any other amount that may become due prior to the Payment Date, we will not take the enforcement action referenced above. We will, however, continue to require strict compliance with the terms and conditions of the Agreement.

33. <u>Exhibit A</u> thus states that the "Total Past Due Amount" plus "any other amount that may become due prior to the Payment Date" must be paid otherwise the full balance of Plaintiff's alleged debt will be accelerated.

34. <u>Exhibit A</u> therefore fails to clearly and unequivocally state the amount which must be tendered to avoid the acceleration of the full balance of Plaintiff's alleged debt.

35. Upon information and belief, <u>Exhibit A</u> was sent pursuant to Wis. Stat. §§ 425.104 and 425.105(1).

36. Wis. Stat. § 425.104 provides:

(1) A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (s. 425.105).

(2) Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

5

37. Wis. Stat. § 425.105(1) provides:

A merchant may not accelerate the maturity of a consumer credit transaction, commence any action except as provided in s. 425.205 (6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

38. Wis. Stat. § 425.104(2) requires that a Notice of Right to Cure contain "a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default …"

39. By stating that Plaintiff must pay "the Total Past Due Amount, together with any other amount that may become due prior to the Payment Date," Exhibit A fails to provide a clear statement of the total payment necessary to cure the alleged default.

40. Nevertheless, Exhibit A also states that, if Plaintiff fails to tender the amounts demand by the letter "all unpaid amounts under your Agreement shall become immediately due and payable."

41. Because Exhibit A fails to fulfill the requirements of Wis. Stat. § 425.104(2), the above statement is false, deceptive, and misleading, and attempts to claim rights, *i.e.* the acceleration of the balance of Plaintiff's alleged debt, which Speedy Cash has reason to know it cannot legally claim.

42. On or about March 2, 2017, Ad Astra mailed a collection letter to Plaintiff regarding the same alleged debt. A copy of the letter is attached to this complaint as Exhibit B.

43. Upon information and belief, the letter in Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

6

44. Upon information and belief, the letter in Exhibit B is a form debt collection letter used by Ad Astra to attempt to collect the alleged debt.

45. Upon information and belief, Exhibit B was the first letter that Ad Astra sent to Plaintiff with respect to Plaintiff's alleged BOA debt.

46. Exhibit B includes the following representation which largely reflects the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along with their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume that this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

47. Exhibit B also includes the following representation:

> Total Amount Due: $474.99

48. Exhibit B, thus, represents that Plaintiff's alleged debt had been accelerated and the full balance was due when Exhibit B was mailed.

49. As discussed above, however, because Speedy Cash never provided Plaintiff with a legally valid notice to right to cure, neither SCIL, Speedy Cash, nor Ad Astra could claim the entire balance of the account was due.

50. Ad Astra's representation in Exhibit B that Plaintiff's alleged debt had a "Total Amount Due" of $479.99 is false, deceptive, and misleading. *See* FTC Staff Commentary, 53 Fed. Reg. 50097, 50106 ("A debt collector may not ... falsely assert that the debt has matured or that it is immediately due and payable, when it is not.").

51. Plaintiff was confused and misled by Exhibits A & B.

52. The unsophisticated consumer would be confused and misled by Exhibits A & B.

### *The FDCPA*

53. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. Debt collection letters containing alleged misrepresentations of the character, amount or legal status of a debt, including misrepresentations of the amount or timing of settlement offers, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will pay the wrong amount, or make a payment toward a debt that is not owed, or even decide to file bankruptcy because the consumer is under the mistaken impression that the debt will increase rather than remain static over time. *See* 15 U.S.C. § 1692e(2)(a); *Boucher*, 880 F.3d at 368; *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim failed on the merits"); *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Qualls v. T-*

8

*H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (door hangers left at plaintiff's residence caused plaintiffs to call debt collector); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

54. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

55. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

56. 15 U.S.C. § 1692e generally prohibits: "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

57. 15 U.S.C. § 1692e(2)(a) specifically prohibits and false representation about the character, amount, or legal status of any debt.

58. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

59. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

60. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

61. 15 U.S.C. § 1692g(a) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;

### *The WCA*

62. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

63. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

11

64. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

65. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

66. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

67. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

68. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

12

Case 2:20-cv-00245-PP    Filed 02/14/20    Page 12 of 16    Document 1

69. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

70. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

71. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – WCA

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. Count I is asserted against Defendants Speedy Cash and SCIL.

74. By representing that a failure to tender a payment by will result in "all unpaid amounts under your agreement" being "immediately due and payable," Exhibit A falsely threatens a right with knowledge or reason to know such a right does not exist because the latter fails to include a "clear statement of the total payment necessary to cure the alleged default pursuant" pursuant to Wis. Stat. §425.104(2).

75. threatens to accelerate Plaintiff's alleged debt because the letter fails to provide a clear statement of the total payment necessary to cure the alleged default pursuant

76. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT II - FDCPA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. Count II is asserted against Defendant Ad Astra.

13

79. By demanding payment of the entire balance of Plaintiff's alleged debt which had not been properly accelerated under Wisconsin Law, <u>Exhibit B</u> includes representations which are false, deceptive, and misleading as to the character, amount, and legal status of Plaintiff's alleged debt and threatens to take action which cannot be legally taken.

80. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f(1), and 1692g(a)(1).

## COUNT III - WCA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Count III is asserted against each Defendant.

83. By demanding payment of the entire balance of Plaintiff's alleged debt which had not been properly accelerated under Wisconsin Law, <u>Exhibit B</u> falsely threatens a right with knowledge or reason to know such a right does not exist.

84. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT IV - FDCPA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. By referring to "Speedy Cash" as the "creditor" associated with Plaintiff's alleged debt, Exhibit B includes representations which are false, deceptive, and misleading as to the name of the creditor to whom such debt is owed.

87. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10) and 1692g(a)(2).

## CLASS ALLEGATIONS

88. Plaintiff brings this action on behalf of two classes.

89. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of <u>Exhibit A</u>, (c) seeking to collect a debt for personal, family, or household purposes, (d) between February 14, 2018 and February 14, 2020, inclusive, (e) that was not returned by the postal service.

90. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of <u>Exhibit B</u>, (c) seeking to collect a debt for personal, family, or household purposes, (d) owed to Speedy Cash and/or SCIL, (e) where such letter was sent between February 14, 2019 and February 14, 2020, inclusive, and (f) was not returned by the postal service.

91. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

92. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants complied with the FDCPA and/or WCA.

93. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

96. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 14, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com